KSC/06.01.21

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Christopher J. Romano
Special Assistant United States Attorney
Christopher.Romano@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4907
MAIN: 410-209-4800
FAX: 410-962-0717

June 4, 2021

VIA EMAIL

Joanna Silver, Esquire
Assistant Federal Public Defender
Office of the Federal Defender
District of Maryland
6411 Ivy Lane
Greenbelt, MD 20770

Re: <u>United States v. Joel William Hammond</u>
    Crim. No. RDB- 21-0211

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Joel William Hammond (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted <u>by June 14, 2021,</u> it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to waive indictment and plead guilty to a one-count criminal information, which charges the Defendant with Conspiracy to Distribute and Possess with Intent to Distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. § 846. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

2. The elements of Count One to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.  That on or about the dates charged in the Criminal Information, in the District of Maryland:

        1. The Defendant knowingly, willfully, and unlawfully agreed with one or more persons to distribute, and possess with

intent to distribute, a mixture or substance containing a detectable amount of crack cocaine;

2. The Defendant knew that the conspiracy would distribute 28 grams or more of a mixture or substance containing a detectable amount of crack cocaine; and

3. The participation by the Defendant was knowing and voluntary, and not by accident or mistake.

Penalty

3.  The maximum penalty provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON- MENT | MAX IMPRISON- MENT | SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS- MENT |
|---|---|---|---|---|---|---|
| 1 | 21 U.S.C. § 846 | 5 years | 40 years | At least 4 years | $5,000,000 | $100 |

a.  Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.  Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c.  Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.  Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.  Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.  Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant

exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the

case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. a. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that the applicable base offense level is a level 28 pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(7) to account for the equivalent of at least 112 grams of cocaine base, but less than 196 grams of cocaine base, reasonably attributable to the Defendant's involvement in the offense. In addition, a 2-level enhancement, pursuant to U.S.S.G. § 3B1.1 is warranted because the Defendant as a source of supply exercised management responsibility over the criminal activities of the drug organization, making the adjusted base offense level **30**.

   b. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility

4

under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

## Rule 11 (c) (1) (C) Plea

8.      a.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **72 months** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a).

        b.      At the time of sentencing, the Government agrees to dismiss any remaining counts in the indictment for which the Defendant is named.

        c.      This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Waiver of Appeal

9.      In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

        a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

  b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

    (i) The Defendant reserves the right to appeal any sentence that exceeds **72 months**; and

    (ii) This Office reserves the right to appeal any sentence below **72 months**; and

  c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

10. a. The Defendant agrees to execute a forfeiture agreement signed by all parties and the Court and the Defendant understands that the Court will enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

  b. The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the agreement and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

  c. The Defendant agrees to assist fully in the forfeiture of the property referenced in the forfeiture agreement. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

  d. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

11.     a.      Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

        b.      If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

12.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement, subject to the limitations outlined in paragraph 8. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

13.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those

7

set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

By: *Christopher J. Romano*
Christopher J. Romano
Special Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6/8/21
Date

Joel William Hammond

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

6/8/21
Date

Joanna Silver, Esq.

8

## ATTACHMENT A

## STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

The Harford County Narcotics Task Force undertook an investigation into a drug trafficking organization (DTO) distributing powder and crack cocaine in Harford County, Maryland. As part of the investigation detectives sought and received authorization on February 4, 2020, from a Circuit Court Judge for Harford County, to intercept wire and electronic communications of several members of the DTO. During the months of February, March, and April of 2020, detectives and monitoring agents intercepted numerous pertinent, drug related communications, over targets telephone and Facebook accounts. The communications intercepted and surveillance of targets further confirmed the drug activities, including those of the Defendant, Joel William HAMMOND.

On March 7, 2020, at approximately 1535 hours, task force detectives followed one of the members of the DTO to HAMMOND's residence, located in Essex, Baltimore County, Maryland. Upon arrival, detectives observed members of the DTO make contact with HAMMOND at 943 Honeywood Place. Following the meeting with HAMMOND, members of the DTO returned to Harford County. Detectives then observed one of the members of the DTO to continue to meet with several known drug users, following the meeting with HAMMOND. Detectives believe this to be consistent with this individual obtaining two to three ounces of crack cocaine from HAMMOND, who was determined to be a source of supply for the DTO.

On March 15, 2020, at approximately 1307 hours, detectives with the task force intercepted a text message conversation between a member of the DTO and HAMMOND in order to arrange a meeting with HAMMOND to obtain crack cocaine. Subsequently, surveillance by detectives confirmed a meeting between HAMMOND and this individual.

On March 21, 2020, detectives intercepted PEN registry data, showing HAMMOND calling the same member of the DTO at 1743 hours. The duration of the call lasted for 78 seconds. Electronic surveillance indicated that this individual was travelling in the direction of HAMMOND's residence in Baltimore County. Detectives responded to the area and observed a meeting take place between this individual and HAMMOND at HAMMOND's residence at 943 Honeywood Place at approximately 1837 hours. After the brief contact, this individual returned to his vehicle and travelled back to Harford County. Based on the information gained during this investigation, detectives believe this individual purchased ounce quantities of crack cocaine from HAMMOND during this meeting.

On March 25, 2020, detectives again intercepted PEN registry data, showing one of HAMMOND's customers in communication with HAMMOND. Based on this information, detectives believed a meeting with HAMMOND was planned to obtain a supply of crack cocaine.

At approximately 1429 hours, detectives observed this individual leave his residence in Harford County. Detectives followed him to 943 Honeywood Place where he met with HAMMOND for a short period of time and then returned to Harford County.

On March 31, 2020, detectives intercepted a series of communications between members of the DTO and HAMMOND, in which one member of the DTO planned to meet with HAMMOND to obtain a supply of crack cocaine. Subsequent intercepted conversations between members of the DTO revealed the individual still had some older crack cocaine left but was in the process of obtaining a fresh supply. This individual was then observed travelling to 943 Honeywood Place, meeting with HAMMOND. Investigators learned that during the meeting, HAMMOND did not have the desired amount of crack cocaine that the person wanted to buy and had only purchased approximately one ounce of crack cocaine from HAMMOND during the meeting. Detectives intercepted communications involving this individual after the meeting that indicated he was unsatisfied with the amount of cocaine he purchased from HAMMOND during the meeting and said he wouldn't have wasted a trip to Essex for the small amount he obtained.

At 1846 hours, detectives intercepted a call between this same individual and HAMMOND. During the call HAMMOND informed the individual that he was trying to get "what he needed." HAMMOND informed him that he would be meeting with his guy to obtain a fresh supply soon and would let him know.

On April 2, 2020, at 1957 hours, detectives intercepted an incoming text message from HAMMOND to this member of the DTO that read, "Yo I grabbed a few more".

On April 3, 2020, at 1047 hours, detectives intercepted a text message conversation between this same member of the DTO and HAMMOND. During the conversation the individual informed HAMMOND that he was "trying to get with" HAMMOND. HAMMOND instructed him to "come down". Detectives observed this individual leaving Harford County and travelling to 943 Honeywood Place, HAMMOND's residence. Detectives observed a brief meeting between the two before the individual travelled back Harford County. Similar meetings were observed by detectives on both April 6 and April 8, 2020.

On April 11, 2020, at 2019 hours, detectives intercepted a text message conversation between a member of the DTO and HAMMOND. During the conversation, HAMMOND texted: "Bro I got a couple left might be dead for a couple days". The other person replied: "Need them". HAMMOND advised: "Aight say less they yours". The two then made arrangements to meet the following day.

On April 21, 2020, at 1932 hours, detectives intercepted a text message conversation between HAMMOND and a member of the DTO. During the conversation, the two discussed meeting later in the day.

At 2017 hours, the individual called HAMMOND and advised that he was on his way. Detectives followed him, as he travelled to 943 Honeywood Place. Upon arrival, detectives observed him make contact with HAMMOND as he entered 943 Honeywood Place. After a brief period of time, he left HAMMOND's residence at 943 Honeywood Place and proceeded to drive back to Harford County. Detectives had previously obtained a search and seizure warrant for his

residence and vehicles. As that person returned to the Harford County, members of the Harford County Sheriff's Office Special Response Team and Harford County Narcotics Task Force served the search warrant on his vehicle during a traffic stop in the area of Rt. 152 and Rt. 1. During the search warrant service, a search of the individual's person revealed a clear plastic bag containing two additional plastic bags of a white substance as well as $660.00 in U.S. currency. Detectives opened the bag and observed that one of the inside bags contained a white hard rock like substance that was similar to powder cocaine that had been directly cut off of a kilogram of pressed cocaine. The total weight of this substance was 16 grams. In the second clear plastic bag was an off-white rock like substance that they recognized based on their training, knowledge, and experience as crack cocaine. The total weight of this bag was 41 grams. Both substances were field tested utilizing a Narc II cocaine ID swab test kit. Both items tested positive for the presence of cocaine. The total weight combined for both items was 57.9 grams.

On April 22, 2020, a search warrant was executed at HAMMOND'S residence. Seized at that time was a small quantity of crack cocaine.

The parties stipulate that the amount of crack cocaine reasonably foreseeable to HAMMOND in connection with his supplying members of the DTO was at least 112 grams but less than 196 grams.

SO STIPULATED:

_Christopher J. Romano_
Christopher J. Romano
Special Assistant United States Attorney

_Joel William Hammond_
Joel William Hammond
Defendant

_Joanna Silver_
Joanna Silver, Esq.
Counsel for Defendant